Matter of Mangal (2025 NY Slip Op 02206)

Matter of Mangal

2025 NY Slip Op 02206

Decided on April 16, 2025

Appellate Division, Second Department

Per Curiam.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on April 16, 2025
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

HECTOR D. LASALLE, P.J.
MARK C. DILLON
FRANCESCA E. CONNOLLY
VALERIE BRATHWAITE NELSON
DEBORAH A. DOWLING, JJ.

2022-04044

[*1]In the Matter of Yovendra Mangal, an attorney and counselor-at-law. Grievance Committee for the Ninth Judicial District, petitioner; Yovendra Mangal, respondent. (Attorney Registration No. 4334769)

DISCIPLINARY PROCEEDING instituted by the Grievance Committee for the Ninth Judicial District. The respondent was admitted to the Bar at a term of the Appellate Division of the Supreme Court in the Second Judicial Department on September 28, 2005.

Courtny Osterling, White Plains, NY, for petitioner.
Scalise & Hamilton, P.C., Scarsdale, NY (Deborah A. Scalise of counsel), for respondent.

PER CURIAM.

OPINION & ORDER
The Grievance Committee for the Ninth Judicial District served the
respondent with a notice of petition and a verified petition, both dated May 19, 2022, containing nine charges of professional misconduct. The respondent served and filed a verified answer dated July 20, 2022, essentially admitting to the factual allegations contained in the petition but denying the conclusions of law contained therein because, according to the respondent, he did not act intentionally or cause harm to his clients or third parties. By decision and order on application dated October 13, 2022, this Court referred the matter to the Honorable Sondra M. Miller, as Special Referee, to hear and report. A preliminary conference was held on January 24, 2023, and a hearing was conducted on March 16, 2023, and May 1, 2023. In a report dated September 27, 2023, the Special Referee sustained all nine charges in the petition. The Grievance Committee now moves, inter alia, to confirm the Special Referee's report insofar as it sustained the charges against the respondent and to disaffirm the Special Referee's report insofar as it made a recommendation as to the discipline to be imposed, and to impose such discipline upon the respondent as this Court deems just and proper. The respondent submits an affirmation in support of confirming the Special Referee's report and to impose the sanction of a public censure based on the mitigation submitted.
The respondent maintained an escrow account at Chase Bank, entitled "Mangal Law Firm P.C., Attorney Trust Account IOLA," with an account number ending in 8127 (hereinafter the escrow account). Charges one through five of the petition allege that the respondent misappropriated fiduciary funds from the escrow account. The misappropriated funds benefitted the respondent's clients, two companies owned by the same principal, Amir Ahmad.
The Petition
The Jamaica Property
In or about August 2019, the respondent represented Queensway Builders in the purchase of real property located at 180-16 145th Drive in Jamaica (hereinafter the Jamaica property). On August 12, 2019, the balance in the respondent's escrow account was $98,235.92, at least $97,512 of which were fiduciary funds held for eight client matters that were unrelated to the [*2]purchase of the Jamaica property. On or about August 13, 2019, the respondent wired $30,000 from the escrow account to the seller's attorney for the Jamaica property when there were no correlating funds on deposit. By reason of the foregoing, charge one alleges that the respondent misappropriated funds entrusted to him as a fiduciary, incident to his practice of law, in violation of rule 1.15(a) of the Rules of Professional Conduct (22 NYCRR 1200.0).
On August 28, 2019, the respondent was required to maintain at least $184,012 in the escrow account for nine client matters that were unrelated to the purchase of the Jamaica property. On August 28, 2019, the escrow account balance was $154,135.92 (a $29,876.08 deficit). On August 29, 2019, the respondent deposited $38,806.67 into the escrow account on behalf of Queensway Builders for the purchase of the Jamaica property. On August 30, 2019, check number 8956 in the amount of $38,400 made payable to the seller of the Jamaica property was paid against the escrow account. On October 2, 2019, check number 8011 in the amount of $4,883.86 made payable to the title company for the Jamaica property purchase was paid when there were no correlating funds on deposit in the escrow account. Check number 8011 was issued on or about August 29, 2019. By reason of the foregoing, charge two alleges that the respondent misappropriated funds entrusted to him as a fiduciary, incident to his practice of law, in violation of rule 1.15(a) of the Rules of Professional Conduct.
In or about September 2019, the respondent represented Queensway Builders in the sale of the Jamaica property. On September 15, 2019, the respondent was required to maintain at least $183,750 in the escrow account for eight client matters unrelated to the sale of the Jamaica property. The escrow account balance on that day, however, was $154,280.59 (a $29,469,41 deficit). On or about September 16, 2019, check number 8958 in the amount of $25,000 made payable to Queensway Builders in connection with the sale of the Jamaica property was paid against the escrow account when there were no correlating funds on deposit. On September 24, 2019, correlating funds for the $25,000 disbursement were deposited into the escrow account. By reason of the foregoing, charge three alleges that the respondent misappropriated funds entrusted to him as a fiduciary, incident to his practice of law, in violation of rule 1.15(a) of the Rules of Professional Conduct.
The Middle Village Property
In or about September 2019, the respondent represented Queensway Builders in the purchase of real property located at 79-18 67th Road in Middle Village (hereinafter the Middle Village property). On or about September 20, 2019, check number 8957 in the amount of $50,000 and check number 1213 in the amount of $26,000, both made payable to the attorney for the seller of the Middle Village property, were paid against the escrow account when there were no correlating funds on deposit. By reason of the foregoing, charge four alleges that the respondent misappropriated funds entrusted to him as a fiduciary, incident to his practice of law, in violation of rule 1.15(a) of the Rules of Professional Conduct.
The 180th Street Property
In or about September 2019, the respondent represented Premier Queens Builders in the sale of real property located at 123-09 180th Street in Jamaica (hereinafter the 180th Street property). On September 30, 2019, the respondent was required to maintain at least $205,075.55 for 10 client matters unrelated to the sale of the 180th Street property. On September 30, 2019, the respondent disbursed by wire transfer $102,896.30 from the escrow account in connection with the sale of the 180th Street property when there were insufficient correlating funds on deposit. The $102,896.31 wire transfer was paid, at least in part, against fiduciary funds unrelated to the 180th Street property transaction. On September 30, 2019, the closing balance in the escrow account was $74,324.83 when the respondent should have had a balance of at least $205,075.55 (a $130,750.72 deficit). By reason of the foregoing, charge five alleges that the respondent misappropriated funds entrusted to him as a fiduciary, incident to his practice of law, in violation of rule 1.15(a) of the Rules of Professional Conduct.
Charges six though eight allege that between on or about May 1, 2019, and on or about December 31, 2019, the respondent failed to make accurate entries of all financial transactions in the escrow account in a ledger book or similar record, failed to maintain copies of bank statements, cancelled checks, and deposit slips for the escrow account, and failed to utilize checks and deposit slips for the escrow account that included the title "Attorney Special Account," "Attorney Trust Account," or "Attorney Escrow Account," in violation of rule 1.15(d)(1) and (2) and (d)(1)(viii) and (b)(2) of the Rules of Professional Conduct, respectively.
The Hearing Record
In 2015, the respondent opened his own law firm as a sole practitioner with no administrative staff or a bookkeeper. He maintained one escrow account and one operating account for the law firm. According to the respondent, he made ledger entries "any time there was activity." The respondent stated that his ledgers consisted of notations on check stubs and entries made into his computer on a monthly basis, documenting the transactions. At times, the respondent requested escrow account checks from the bank (hereinafter temporary checks) to disburse funds, and the respondent testified that he did his best to maintain a copy of the check stubs for these temporary checks. However, when the Grievance Committee requested copies of the temporary check stubs, the respondent did not produce them. Regarding the escrow account ledger that the respondent maintained on his computer, the respondent produced a copy of this ledger, which listed only a dollar amount associated with a client. No transactions or dates were indicated on this report, despite the respondent's testimony at his examination under oath (hereinafter EUO) that the ledger documented the escrow account activities. In an affidavit submitted to the Grievance Committee, the respondent admitted that he "did not maintain a running daily balance, relying instead on Chase [B]ank's online electronic records relating to the escrow account." The respondent further stated that he was unaware of the requirement to do so because he was only "generally aware" of the requirements of rule 1.15 of the Rules of Professional Conduct and was "self-taught."
At the hearing, the respondent testified that he used his computer ledger and bank statements to perform a monthly reconciliation, but admitted that the numbers did not always correspond due to the timing of when the checks were negotiated against the escrow account. Despite these discrepancies, it does not appear that the respondent rectified his process for reconciling the escrow account. As demonstrated by a matter for client Marcus Frederick, the respondent failed to notice that a check in the amount of $60 issued from the escrow account was never cashed by the recipient after the check was issued on or about March 6, 2020. At his EUO, the respondent was asked why he did not realize that this check was never paid if he purportedly reconciled the escrow account on a regular basis. The respondent answered, "I can't."
The record indicates that the respondent repeatedly over-disbursed funds from the escrow account to the benefit of Queensway Builders, Premiere Queens Builders, and/or Ahmad. At his EUO, the respondent admitted that based on his own ledger, he over-disbursed approximately $135,000 for the benefit of these clients. At the hearing, the respondent testified that he did not verify the existence of correlating funds in the escrow account prior to disbursement because he relied on statements by Ahmad and other parties that the funds would be there. The respondent also disbursed various funds from the escrow account at the direction of Ahmad and could not explain the purpose of the disbursements, except that they were done at Ahmad's request.
Approximately one month after a $116,000 check was dishonored from the escrow account, which triggered this grievance investigation, the respondent continued to over-disburse funds on behalf of Ahmad such that the respondent misappropriated approximately $112,000 from other client funds.
The Special Referee's Report
In a report dated September 27, 2023, the Special Referee sustained all nine charges in the petition. The Special Referee questioned the credibility of the respondent's testimony that the over-disbursements were due to confusion caused by multiple transactions that occurred in the escrow account:
"However, this testimony is inconsistent with the record of transactions, which were limited to five transactions in the month of August in 2019. The misappropriations did not result from deposited funds not clearing fast enough, but were made with no deposits of correlating funds for the amounts he disbursed. . . . Mr. Mangal also testified that his regular practice was to check the attorney trust account balance, to ensure correlating funds were received and/or deposited, but did not have an explanation for failing to do so with the Queensway Builders matters. Not ensuring that correlating funds had cleared are unexplained deviations of practice. These balances were never confirmed over months after the occurrence, and no person or document has been provided in support of his claim of reliance. Rather, these facts are consistent with Mr. Mangal unknowingly disbursing funds in the absence of correlating deposits in order to accommodate Queensway Builders and Premier Queens Builders.
"Even if Respondent lacked actual knowledge at the time of the transfers, his error in failing to review his records to confirm if there were correlating funds shows a conscious disregard of his [*3]fiduciary duties in order to accommodate these clients."
Findings and Conclusion
In view of the evidence adduced at the hearing and the respondent's admissions, we find that the Special Referee properly sustained all nine charges. Accordingly, that branch of the Grievance Committee's motion which is to confirm the Special Referee's report insofar as it sustained the charges against the respondent is granted. In determining an appropriate measure of discipline, we have considered in mitigation, among other things, the respondent's pro bono work, evidence of his positive character, and remedial measures implemented by the respondent to properly maintain the escrow account. Notwithstanding the mitigation advanced, we find that the respondent failed to honor his obligations as a fiduciary and repeatedly misappropriated significant clients funds from other clients for the benefit of Ahmad and his companies.
Under the totality of the circumstances, we find that the respondent's conduct warrants his suspension from the practice of law for a period of two years (see Matter of Fonti, 183 AD3d 17).
LASALLE, P.J., DILLON, CONNOLLY, BRATHWAITE NELSON and DOWLING, JJ., concur.
ORDERED that the branch of the Grievance Committee's motion which is to confirm the Special Referee's report insofar as it sustained the charges against the respondent and to disaffirm the Special Referee's report insofar as it made a recommendation as to the discipline to be imposed are granted, and the motion is otherwise denied; and it is further,
ORDERED that the respondent, Yovendra Mangal, is suspended from the practice
of law for a period of two years, commencing May 16, 2025, and continuing until further order of this Court. The respondent shall not apply for reinstatement earlier than November 16, 2026. In such application (see 22 NYCRR 1240.16), the respondent shall furnish satisfactory proof that during the period of suspension, he (1) refrained from practicing or attempting to practice law; (2) fully complied with this opinion and order and with the terms and provisions of the rules governing the conduct of disbarred or suspended attorneys (see id. § 1240.15); (3) complied with the applicable continuing legal education requirements of 22 NYCRR 691.11(a); and (4) otherwise properly conducted himself; and it is further,
ORDERED that the respondent, Yovendra Mangal, shall comply with the rules governing the conduct of disbarred or suspended attorneys (see id. § 1240.15); and it is further,
ORDERED that pursuant to Judiciary Law § 90, during the period of suspension and until the further order of this Court, the respondent, Yovendra Mangal, shall desist and refrain from (1) practicing law in any form, either as principal or as agent, clerk, or employee of another; (2) appearing as an attorney or counselor-at-law before any court, Judge, Justice, board, commission, or other public authority; (3) giving to another an opinion as to the law or its application or any advice in relation thereto; and (4) holding himself out in any way as an attorney and counselor-at-law; and it is further,
ORDERED that if the respondent, Yovendra Mangal, has been issued a secure pass by the Office of Court Administration, it shall be returned forthwith to the issuing agency and the respondent shall certify to the same in his affidavit of compliance pursuant to 22 NYCRR 1240.15(f).
ENTER:
Darrell M. Joseph
Clerk of the Court